CATARACT POWER & CONDUIT CO. v. CITY OF BUFFALO.

(Supreme Court, Appellate Division, Fourth Department.   March 3, 1909.)

1. ELECTRICITY (§ 4*)—FRANCHISES TO COMPANIES—CONSTRUCTION.

Defendant city enacted an ordinance authorizing two corporations to furnish light, heat, and power, subject to certain conditions, among which were that, when either company desired to construct its lines, it should file with the board of public works its plan, and should not proceed with the work until approval thereof by the board and common council and the issue of a permit that the structures should be sufficient for at least one other company, which additional space should not be used by the company receiving the grant for 10 years after its acceptance, during which time the city might use such additional space without compensation for any public purpose from which it should not derive a revenue, and, if commenced, such use might be continued for the whole term of the grant, and the city might use such additional space during the 10 years in furnishing light, power, etc., for other than public purposes, upon making compensation, and if the city should commence such use of the additional space during the 10 years it might be continued during the whole term of the grant upon making compensation, but if the additional space remained unused after the end of 10 years, and neither the city nor anyone authorized by it should have become entitled to the use of the space, the company receiving the grant might use it for its own purposes. *Held*, that the ordinance contemplated that all of the structures covered by the original plan should be completed within 10 years, and plaintiff could not deprive the city of its right to use the additional space therein by delaying the work beyond the 10-year period; the city having a reasonable time after they were completed in which to occupy the additional space, if they were not completed within 10 years.

[Ed. Note.—For other cases, see Electricity, Cent. Dig. § 1; Dec. Dig. § 4.*]

2. ELECTRICITY (§ 4*) — FRANCHISES TO COMPANIES — CONSTRUCTION — "REVENUE."

The city could not use such additional space to transmit electricity to use in pumping water for private use without compensation, the water rates paid being "revenue" under the ordinance; nor could it use that space to transmit electricity for power for private use, or to drive pumps or light the water bureau station, without compensation.

[Ed. Note.—For other cases, see Electricity, Cent. Dig. § 1; Dec. Dig. § 4.*

For other definitions, see Words and Phrases, vol. 7, pp. 6206–6208; vol. 8, pp. 7789, 7790.]

3. CONSTITUTIONAL LAW (§ 46*) — VALIDITY OF ENACTMENT—NECESSITY OF DECISION.

Courts will not instruct the Legislature in advance as to their legislative powers under the Constitution; so that the Supreme Court will not decide, before it is enacted, whether a proposed statute would be constitutional.

[Ed. Note.—For other cases, see Constitutional Law, Cent. Dig. § 43; Dec. Dig. § 46.*]

4. COSTS (§ 32*)—JUDGMENT FOR BOTH PARTIES.

Where judgment was in part for plaintiff and in part for defendant, no costs should be allowed.

[Ed. Note.—For other cases, see Costs, Cent. Dig. § 112; Dec. Dig. § 32.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Submitted controversy on an agreed case by the Cataract Power & Conduit Company against the City of Buffalo. Judgment in part for each party, as stated.

Argued before McLENNAN, P. J., and SPRING, WILLIAMS, KRUSE, and ROBSON, JJ.

Daniel J. Kenefeck, for plaintiff.

Louis E. Desbecker and Samuel F. Moran, for defendant.

WILLIAMS, J. Judgment should be ordered in favor of plaintiff on the fourth and sixth prayers, and for the defendant on the first, second, and third prayers (the fifth not passed upon, and no costs allowed).

The controversy arises over the construction of an ordinance passed by the common council of the city, granting the right to introduce electrical energy into the city for the purpose of light, heat, and power. The Niagara Falls Power Company and another corporation of similar powers each petitioned the city for such right, and December 2, 1895, the ordinance in question was adopted and approved, granting the right, subject to certain conditions and restrictions, among which were these:

First. When either company desired to construct its lines, it should file with the board of public works a plan and specifications, and should not have authority to proceed with the work, until such board and common council should have approved thereof, and said board and the common council should have approved thereof, and said board should issue its permit, and the board of park commissioners should consent as to any lands of which it had control.

Second. The structures should be sufficient to afford facilities for at least one other company, which additional space should not be used by the company receiving the grant for 10 years after the acceptance of the grant, and at any time during the 10 years the city might use such additional space for any public purpose from which it should not derive a revenue without compensation, and such use, if commenced, might be continued upon the same terms for the whole period of the grant. The city might also use such additional space during the 10 years for the purpose of furnishing light, heat, and power for other than public purposes, or authorize any other company to use it for similar purposes, upon such city or company making compensation; and if such city or company should commence such use of the additional space, during the 10 years, such use might be continued during the whole period of the grant, upon making compensation. If after the end of 10 years such additional space should remain unused, and neither the city nor the company should have become entitled to the use of the same, then the company receiving the grant might use it for its own purposes. The structure should also be sufficient to accommodate six Buffalo fire alarm telegraph wires and six wires of the Buffalo police signal system call, and the city should be permitted to use the same without compensation.

Eleventh. The grant should be for the period of 36 years from the date of acceptance.

Fifteenth. The grant should not become operative until accepted by any company.

On January 14, 1896, the Niagara Falls Power Company accepted the franchise. No other company accepted one. July 10, 1896, the franchise was with the assent of the city assigned to this plaintiff, and the consent went into effect October 5, 1896. Since that time the plaintiff has erected extensive structures in the city, and has and is engaged in selling and distributing electric energy. The city has never used any of the additional space provided for under the franchise for any purpose, nor has it authorized any other company to use it; but the 10-year period has by agreement of the parties been extended until 60 days after the entry of the judgment herein.

The city owns and operates the only waterworks for the supply of the city and its inhabitants, pumping the water from Niagara river, and distributing it within the city and in the vicinity outside, for which service it charges water rates, regulated by ordinance. In the financial literature of the city these water rates are classified as "revenues," and the expense connected with the water supply as "expenditures." The city's use extends to the fire department's supply for extinguishing fires, sanitary purposes in schools and other city buildings and places, flushing sewers, and other usual public purposes. All this water is pumped at the same station, and served through the same pipes; there being no separation as to public and private consumption.

The plaintiff is selling electrical power to the city, to drive one of its pumps. The business of supplying water is under the control of the "bureau of water" of the department of public works. The expenses of this bureau are provided by certain estimates for the various public uses, and raised by tax; and it also receives the revenues for the sale to private persons and corporations. All money accruing each year from the sale and use of water is turned over to the city treasurer, to be used for the payment of the principal and interest of the water bonds, and the balance, if any, is applied as a resource in the appropriations to be raised by tax for the next fiscal year.

The questions for our determination are embodied in several prayers in behalf of the plaintiff contained in the submission, viz. (in brief): First, that by the ordinance the plaintiff is not required in its structures, erected after the expiration of the 10-year period, to provide the additional space (so called); second, that the city has no rights as to structures erected after the 10-year period, or to authorize any other company to use such additional space; third, that the city has no right to use, or authorize any other company to use, such additional space, unless said use shall have been commenced before the expiration of the 10-year period; fourth, that the water rates paid by persons and corporations for their private use is "revenue" under the ordinance, and the city has no right to use such additional space for the purpose of transmitting electricity to use in pumping water for such private use, without compensation; fifth, that the city has no right, and the Legislature cannot give it the right, to engage in or carry on the business of buying or generating electricity and selling

the same to private parties, or to use such additional space for that purpose; sixth, that the city has no right to use such additional space for the purpose of transmitting electricity for power for private use, or drive pumps, or light the water bureau station, without compensation; seventh, general prayer for relief and costs.

First. The questions suggested by the first three prayers may be considered together, and they relate to the rights of the parties as to any structure that may be erected after the 10-year period (so called) has expired. Literally this period is described in the ordinance (subdivision 2) as "ten years after the acceptance of the grant." The franchise granted by the ordinance was not general to construct its lines anywhere in the city at any time during the 36 years of its life, in the discretion of the grantee but to construct them in the streets, avenues, etc., specified in the plan which was required to be then filed with the board of public works and approved by that board and by the common council. Certainly no other streets, avenues, etc., could be occupied without the filing of a new plan and a new approval by the board and the common council. No express provision is made for the filing of any additional plan, and it may be questionable whether the grantee of the franchise would have the right to so extend its lines, except by the consent of the city and the said boards. The ordinance provided that the grantee should submit the plans and specifications referred to therein, within 90 days after it accepts the grant, which would seem to imply that no further plan than that first filed would be submitted, and no extensions of the lines made under that ordinance. The ordinance does not seem to provide for or anticipate the construction of any structures other than those described in the plans originally filed.

The record does not show what streets, avenues, etc., were specified in the plan filed, nor whether the lines covered by such plan have all been constructed. These propositions submitted for our determination are therefore indefinite, in that it is not stated whether they refer to construction in streets, avenues, etc., covered by the plan filed, or such as may be constructed in other streets, avenues, etc., not covered by such plan. I should say no provision is made in the ordinance as to the latter class of structures, and that the matter would be controlled by the provisions of any new franchise or any extension of the old franchise that might be granted, and therefore would be subject to any agreement then made between the parties. As to the former structures, those covered by the plan filed, I think it was contemplated that they should all be completed within the 10 years, and that the grantee of the franchise could not deprive the city of its right to have and use the additional space, or to give another company the right to use it, by delaying the work beyond the 10-year period; that the parties contemplated the city having this right as to all the structures covered by the plan filed, so that, if these structures are not constructed within the 10-year period, the city would have a reasonable time after the completion of the work to occupy the additional space and preserve its rights in the same.

Very likely these propositions submitted to us refer only to the

structures covered by the plan filed. It may well be that, in order to avail itself of this right as to structures erected after the 10-year period has expired, the city must have occupied within the 10 years those constructed within that time. Understanding these three questions to refer to structures covered by the plan filed, I think we should refuse to decide as prayed for by the plaintiff.

Second. I think the plaintiff is right in the fourth prayer. It seems to me clear that water rates, paid by private parties to the city, constitute "revenue," within the meaning of that word as used in the ordinance, and the city has no right to use the additional space for the purpose of pumping water for such private use without compensation. Much of the water used is for public purposes, and for this no water rates are paid; but a large amount is received as water rates for merely private purposes and from private persons, and this certainly is "revenue," and for it compensation should be paid.

Third. The fifth prayer is a peculiar one. It involves the question in form whether the city can use the so-called additional space for carrying on the business of buying or generating and transmitting electricity for sale to individuals and corporations for private use. It is not claimed it can now do so, because no power to carry on such a business at all is given the city under its charter, although the ordinance apparently gives the right to use the additional space. But it is said there is a movement started to secure an amendment to the charter giving the city this power, and therefore we are by this submission gravely asked to say whether such an amendment, if made by the Legislature, would be constitutional. This is the first time I ever heard such a proposition made. It is time enough to pass upon the constitutionality of an act of the Legislature after it has become a law. Courts do not instruct the Legislature in advance as to what power they have under the Constitution to pass laws. We must, I think, decline to pass upon this question.

Fourth. The sixth prayer is correct, and should be found for the plaintiff. The additional space cannot, of course, be used for private purposes, or a public purpose from which a "revenue" is derived, without compensation.

Fifth. Inasmuch as we find for the plaintiff in some respects and for the city in others, no costs should be allowed. All concur.